**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SUBPOENAS ISSUED IN: <br><br> *Appel v. Wolf* <br> Pending in the U.S. District Court for the <br> Southern District of California <br> Case No. 18-cv-814-L-BGS <br><br> HOWARD APPEL, <br><br>             Petitioner, <br><br>    -against- <br><br> ROBERT S. WOLF, <br><br>             Respondent, <br><br> CITIBANK N. A.; BMO <br> CAPITAL MARKETS <br> CORP.; KPMG, LLP; J. P. <br> MORGAN CHASE N.A.; J.P. <br> MORGAN SECURITIES <br> LLC, <br><br>            Nominal <br>            Respondents. | Misc. Case No. 21 MC 500 <br><br> **ORAL ARGUMENT REQUESTED** |

**PETITIONER HOWARD APPEL'S MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION TO QUASH NON-PARTY SUBPOENAS, OR IN**
**THE ALTERNATIVE FOR A PROTECTIVE ORDER, AND FOR FEES**
**ASSOCIATED WITH THIS MOTION**

i

## TABLE OF CONTENTS

I.    INTRODUCTION AND FACTUAL BACKGROUND ...............................1

II.   ARGUMENT..................................................................................4

  A.  The Subpoenas Seek Records That Are Not Relevant to Any Party's Claims or Defense.......................................................................................4

  B.  The Subpoenas Are Not Proportional to the Needs of the Case and Are Therefore Unjustly Burdensome and Oppressive. ..........................................6

  C.  The Subpoenas Improperly Seek Records That Are Private, Confidential, and Otherwise Proprietary and Sensitive Commercial Information. .....................7

  D.  The Subpoenas Are Nothing More Than an Attempt to Harass Petitioner....10

III.  REASONABLE EXPENSES SHOULD BE AWARDED TO PETITIONER TO BE PAID BY RESPONDENT AND HIS COUNSEL. .........................11

IV.   CONCLUSION..............................................................................11

# TABLE OF AUTHORITIES

### Cases

*Britt v. Superior Court,* 20 Cal.3d 844, 855-856 (1978) ------------------------------ 8

*Burrows v. Superior Court,* 13 Cal.3d 238 (1974) ------------------------------------ 9

*Griswold v. State of Connecticut,* 381 U.S. 479, 484 (1965) ------------------------- 8

*Hill v. National Collegiate Athletic Ass'n.,* 7 C4th 1, 16-17 (1994) ------------------ 8

*In re Bard Filters Products Liability Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016) - 4

*Leonel v. American Airlines, Inc.,* 400 F3d 702, 711 (9th Cir. 2005) ---------------- 9

*Personal Audio LLC v. Togi Entertainment, Inc.* 2014 WL 1318921, at 2. (N.D. Cal. 2014) ------------------------------------------------------------------------------- 5

*Roberts v. Gulf Oil Corp.,* 147 Cal.App.3d 770, 795 (1983) -------------------------- 9

*Travelers Indemnity Co. v. Metropolitan Life Insurance Co.* 228 F.R.D. 111, 113 (D. Conn. 2005) ---------------------------------------------------------------------------- 8

*Valley Bank of Nevada v. Superior Court*, 15 C3d 652, 658 (1975)------------------ 9

### Statutes

Fed. R. Civ. P. 26--------------------------------------------------------------------------- 4, 7

Fed. R. Civ. P. 45(d)(1)------------------------------------------------------------------ 7, 8, 11

Fed. R. Evid. 401 ------------------------------------------------------------------------------ 5

### Other Authorities

Article I, § 1 of the California Constitution------------------------------------------------ 8

United States Constitution----------------------------------------------------------------------- 8

### Treatises

5 B. Witkin, Summary of California Law § 656 (11th ed. 2021) (citing cases)----- 6

Petitioner Howard Appel ("Appel") by and through his attorneys, and pursuant to Federal Rules of Civil Procedure 26 and 45, submits this memorandum of law in support of his motion to quash non-party subpoenas, or in the alternative issuing a protective order appropriately limiting the scope of the documents to be produced, and for fees associated with this motion.

## I.    INTRODUCTION AND FACTUAL BACKGROUND

These subpoenas arise from a defamation action pending in the Southern District of California.  That action stems from a libelous e-mail sent by Respondent Robert Wolf ("Wolf") on or about November 27, 2017, in a different lawsuit between Petitioner Howard J. Appel ("Appel") and Concierge Auctions ("Concierge").  Wolf, a lawyer who represented Concierge in other matters (though not that particular litigation), sent an e-mail to counsel in that case which stated, in a relevant part, "[b]y the way, I know Howard Appel from when I used to head the litigation side at Gersten Savage, more than 10 years ago. Howard had legal issues (securities fraud) along with Montrose Capital and Jonathan Winston, who were also clients at the time. Please send him my regards." (Declaration of Steven Brower ["Brower Decl."], Ex. A).

Nothing in this e-mail was true.  Wolf did not know Appel at all, nor had Appel ever had "legal issues (securities fraud) along with Montrose Capital." Although Wolf apparently felt familiar enough with Appel to share that he had

1

privileged knowledge about Appel's legal affairs (and to drop not-so-subtle innuendos that he might use that knowledge), he was not familiar enough to realize (or diligent enough to find out) that the Petitioner Howard J. Appel, in this case, was a different person. The Howard M. Appel to whom Wolf was referring in his e-mail (the "Libelous E-mail") is currently serving a federal sentence for securities fraud.

Counsel for Appel asked Wolf to retract the statement, and Wolf refused—twice. Appel thereafter brought the underlying defamation action. In discovery, Wolf was forced to admit that he did not know Petitioner Howard Appel at the time he sent the Libelous E-mail.

Faced with clear liability for his defamatory statements, Wolf has now doubled down and chosen a reprehensible strategy of engaging in a fishing expedition, hoping to be able to claim that his false statements were inadvertently true. In a desperate effort to smear Appel again, Wolf is attempting to argue that legal issues that Appel's former employer had—that arose after Appel worked there, which Wolf did not know about, and which were not securities fraud—somehow "prove" that the Libelous E-mail became true, later on.

As part of his smear campaign, on or about June 4, 2021, Wolf issued eight massive subpoenas requesting communications between Appel and various financial institutions concerning a credit agreement between Millennium Lab Holdings II, LLC/Millennium Laboratories, LLC (a business entity where Appel previously

2

served as a president) and several lenders.  At issue here are subpoenas issued to Citibank N. A. (Brower Decl., Ex. A); BMO Capital Markets Corp. (*Id.*, Ex. B); KPMG, LLP (*Id.*, Ex. C); J. P. Morgan Chase N.A. (*Id.*, Ex. D); J.P. Morgan Securities LLC (*Id.*, Ex. E) (the "Subpoenas").

On April 27, 2021, in his response to Appel's Requests for Admission, Wolf admitted that (1) he <u>did not know</u> Appel at the time the Libelous E-mail was communicated on November 27, 2017 (Brower Decl., Ex. G [Wolf's Response to RFA No. 5]); (2) Appel <u>was not</u> Wolf's client at any time before November 27, 2017 (*Id.*, [Wolf's Response to RFA No. 6]); (3) Appel <u>was not</u> a client of Gersten Savage when Wolf was the "head of the litigation side" there at any time before November 27, 2017 (*Id.* [Wolf's Response to RFA No. 7); and (4) Wolf <u>did not know</u> Appel had "legal issues" when Wolf was the "head of the litigation side at Gersten Savage" (*Id.* [Wolf's response to RFA No 8]).  Because Wolf has admitted that he did not know Appel at the time he sent the Libelous E-mail—and that he was obviously talking about a different person—he cannot claim now that he knew about Appel's purported legal issues when he sent the e-mail.  Indeed, Wolf does not even contend that the legal issues that Appel's former employers had were securities fraud; he claims only that they had to do with Medicare billing.

The Subpoenas should be quashed for the following reasons: (1) the Subpoenas seek records that are not relevant to any party's claims or defenses;

3

(2) the Subpoenas are not proportional to the needs of the case and therefore unjustly burdensome and oppressive; (3) the Subpoenas improperly seek records that are protected from disclosure by the Constitutional rights to privacy and confidentiality; and (4) the Subpoenas are nothing more than an attempt to harass Petitioner.

On June 18, 2021, Petitioner's counsel e-mailed counsel for Respondent a meet and confer letter requesting to withdraw the Subpoenas for the reasons delineated in this Motion. On June 22, 2021, counsel for Respondent replied, refusing to withdraw the Subpoenas. (Brower Decl., Ex. H).

## II.   ARGUMENT

### A. The Subpoenas Seek Records That Are Not Relevant to Any Party's Claims or Defense.

The Rules of Civil Procedure permit discovery regarding only non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Importantly, the scope of discovery no longer includes information "reasonably calculated to lead to the discovery of admissible evidence." The amendments to Rule 26, effective December 1, 2015, purposefully removed that phrase "to deal with the problem of over-discovery." *Id*.; *In re Bard Filters Products Liability Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016). Evidence is relevant only if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would

4

be without the evidence." Fed. R. Evid. 401. "On a Rule 45 motion to quash a subpoena, the moving party has the burden of persuasion, but the party issuing the subpoena must demonstrate that the discovery sought is relevant." *Personal Audio LLC v. Togi Entertainment, Inc.* 2014 WL 1318921, at 2. (N.D. Cal. 2014).

The documents Wolf is seeking are not relevant. Wolf admits that he did not know Appel when he sent the Libelous E-mail, that he never represented Appel, and that Appel did not have any "legal issues (securities fraud) along with Montrose Capital and Jonathan Winston." No amount of discovery can change those conclusively established facts.

Rather than litigating the case, Wolf's Subpoenas amount to a fishing expedition trying to "dig up some dirt" on Appel in a silly effort to contend that he would be able to prove that his libelous statement was actually somehow true. Wolf's contention that, with the aid of additional discovery, he might prove that his Libelous E-mail was "substantially true" is preposterous. While the forum state law (California) does not require that a respondent "justify every word of the alleged defamatory matter," it does not allow Wolf to make false claims and then hope that he can find some facts to support them. California's truth defense allows for only "slight inaccuracy in the details." 5 B. Witkin, Summary of California Law § 656 (11th ed. 2021) (citing cases). Here, there is not a slight inaccuracy of details. There is nothing about the Libelous E-mail that is true. Appel was never a client of Wolf's;

he did not have securities fraud issues; and he was never engaged with Montrose Capital and Jonathan Winston.

Wolf's argument that the "gist" of his e-mail might have turned out to be correct because a different company, with different personnel, represented by different lawyers, at a different time, had a different set of legal problems, is without merit. If Wolf's view of the law were correct, every entity ever associated with a defamation plaintiff would be subject to unlimited discovery by a defendant hoping to find any scrap of truth to the false communication at issue. Accordingly, the records requested by the Subpoenas are beyond the scope of the permissible discovery, and the Subpoenas should be quashed.

**B.** **The Subpoenas Are Not Proportional to the Needs of the Case and Are Therefore Unjustly Burdensome and Oppressive.**

Pursuant to Rule 45(d)(3)(iv) of Federal Rule of Civil Procedure, a court <u>must</u> quash a subpoena that subjects a person to undue burden.

To determine whether a subpoena should be enforced, the Court is guided by both Rule 45, which protects a subpoenaed party from "undue burden," and Rule 26, which provides that the Court must limit discovery if "the discovery sought…can be obtained from some other source that is more convenient, less burdensome, or less expensive" or if "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 45(d)(1); Fed. R. Civ. P. 26(b)(2)(C)(i).

6

"A party or lawyer responsible for issuing and serving a subpoena, therefore, must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1). In turn, the Court "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance" with a subpoena. Fed. R. Civ. P. 45(d)(2)(B)(ii).

Here, Wolf failed to first request the records from Appel before exposing the non-parties to the undue burden of responding to lengthy Subpoenas. Wolf served Subpoenas that are <u>over 380 pages</u> long with exhibits, requesting <u>"Any and all communications"</u> for a period of <u>four years</u> between Appel, his former employer, and various financial institutions and other parties concerning certain credit agreements.

Considering that the requested information would have no probative value as Wolf admitted he did not know Appel at the time he published the defamatory statement, the proposed discovery outweighs its likely benefits.

C. **The Subpoenas Improperly Seek Records That Are Private, Confidential, and Otherwise Proprietary and Sensitive Commercial Information.**

Rule 45(d)(3)(B)(i) provides, "[t]o protect a person subject to or affected by a subpoena, the Court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires (i) disclosing a trade secret or other

7

confidential research, development, or commercial information. . ." Fed. R. Civ. P. 45(d)(3)(B)(i).  In assessing these considerations, "special weight" should be given "to the burden on non-parties of producing documents to parties involved in litigation." *Travelers Indemnity Co. v. Metropolitan Life Insurance Co.* 228 F.R.D. 111, 113 (D. Conn. 2005).  "The Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on a non-party." *Fears v. Wilhelmina Model Agency, Inc.,* 2004 WL 719185 (S.D.N.Y. 2004).

Even highly relevant, nonprivileged information may be shielded from discovery if its disclosure would impair a person's "inalienable right of privacy" provided by Article I, § 1 of the California Constitution.  *Hill v. National Collegiate Athletic Ass'n.,* 7 C4th 1, 16-17 (1994); *Britt v. Superior Court,* 20 Cal.3d 844, 855-856 (1978).  The right to privacy is also guaranteed by the United States Constitution.  *Griswold v. State of Connecticut,* 381 U.S. 479, 484 (1965).  Additionally, business entities have a general right to privacy under the United States Constitution via the Fourth, Fourteenth, and Fifth Amendments.  *Roberts v. Gulf Oil Corp.,* 147 Cal.App.3d 770, 795 (1983); *Burrows v.  Superior Court,* 13 Cal.3d 238 (1974).  A third person's right of privacy may be asserted by any party to the action. *Valley Bank of Nevada v. Superior Court*, 15 C3d 652, 658 (1975).

The right of privacy in California is "in many respects broader than its federal

constitutional counterpart, [in that it] protects individual from the invasion of their privacy not only by state actors but also by private parties." *Leonel v. American Airlines, Inc.,* 400 F3d 702, 711 (9th Cir. 2005).   In order for information to be protected from discovery under the California right to privacy, Appel must demonstrate the following elements: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) a showing that production would lead to a serious invasion of the protected privacy interest. *Id* at 712. *Notably*, "[t]hese elements do not constitute a categorical test, but rather serve as threshold components of valid claim to be sued to 'weed out claims that involve so insignificant or de minimis an intrusion on a constitutionally protected privacy interest as not even to require an explanation or justification. . .'" *Id*.

Here, the Subpoenas seek "Any and all communications" for the period of four years between Appel and various financial institutions and other parties concerning credit agreements between Millennium Lab Holdings II, LLC/Millennium Laboratories, LLC and several lenders, Millennium Laboratories Confidential Information Memorandum, Millennium Laboratories' Commitment Letter dated March 16, 2014; Millennium Lab Holdings II, LLC's Chapter 11 bankruptcy court proceeding, etc. All the foregoing parties are entitled to privacy and confidentiality protections, and the requested communications are not discoverable.

### D. **The Subpoenas Are Nothing More Than an Attempt to Harass Petitioner.**

As demonstrated above, Wolf's Subpoenas seek records totally irrelevant to any party's claims or defense and are not proportionate to the legitimate discovery needs of the case.  Instead, Wolf's strategy here is transparent.  Rather than address the undisputed fact that Wolf lied about Appel, Wolf is attempting to further smear Appel and damage his potential business relationships throughout the country.  Indeed, Wolf is using the broad litigation privilege to issue subpoenas to Appel's business contacts, allowing him to repeat claims of "securities fraud," even where he admits that there was no truth to his original statement.  This places Appel in the position of having to explain the false and defamatory nature of Wolf's claims to some of the largest banks, accounting firms, and companies that Appel deals with in business.   Additionally, Wolf is attempting to uncover significant confidential information that is protected by California's broad protections of privacy, including financial privacy.

Wolf's actions here are nothing more than an effort to harass a litigation opponent and attempt to bury him in irrelevant discovery.  Having issued subpoenas in three different judicial districts (and none in the district where the case is actually pending), Wolf has forced Appel to chase him around the country to protect his interests and bring to a resolution this clear case of libel.

10

Such tactics should not be condoned by the courts, and the Subpoenas should be quashed to forestall Wolf's oppressive tactics.

## III.    REASONABLE EXPENSES SHOULD BE AWARDED TO PETITIONER TO BE PAID BY RESPONDENT AND HIS COUNSEL.

Rule 45(d)(1) provides, "[t]he court for the district where compliance is required <u>must</u> enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on party or attorney who fails to comply [who fails to take reasonable steps to avoid imposing undue burden or expense on the subpoenaed person]." Fed. R. Civ. P. 45(d)(1). (emphasis added.)

As stated in the Declaration of Steven Brower, Appel has incurred expenses and fees as a result of Wolf's unauthorized conduct in the amount of $4,974.00. (Brower Decl., ¶ 10.) Accordingly, the Court should order Wolf and his counsel of record Wingert Grebing Brubaker & Juskie LLP, and Andrew A. Servais pay Brower Law Group, APC reasonable expenses and fees incurred in making this Motion in the amount of $4,974.00.

## IV.    CONCLUSION

For the foregoing reasons, Petitioner Howard Appel's Motion to quash the Subpoenas should be granted, or in the alternative the Court should issue a protective

order appropriately limiting the scope of the documents to be produced.

Dated:  July 1, 2021                        Respectfully submitted,

                                            *[signature]*

                                            James W. Halter
                                            RASCO KLOCK PEREZ & NIETO, LLC
                                            555 Fifth Ave., 17th Floor
                                            New York, NY 10017
                                            (646) 970-4770
                                            (305) 718-0639 (facsimile)
                                            jhalter@rascoklock.com


                                            Steven Brower (*pro hac vice* admission
                                            forthcoming)
                                            BROWER LAW GROUP, A.P.C.
                                            23601 Moulton Pkwy, Suite 220
                                            Laguna Hills, CA 92653
                                            Office: 949-668-0825
                                            Direct: 949-328-1548
                                            Steve@BrowerLawGroup.com

                                            Attorneys for Petitioner Howard Appel