UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD APPEL,<br><br>                              Petitioner,<br><br>v.<br><br>ROBERT S. WOLF,<br><br>                            Respondent. | Case Nos.:  21-cv-1466-L-BGS;<br>                    21-cv-1536-L-BGS;<br>                    21-cv-1557-L-BGS<br><br>**ORDER GRANTING IN PART MOTIONS TO QUASH NON-PARTY SUBPOENAS, OR IN THE ALTERNATIVE FOR A PROTECTIVE ORDER, AND FOR FEES ASSOCIATED WITH THESE MOTIONS** |

I.    INTRODUCTION

Petitioner Howard Appel, the Plaintiff in *Appel v. Wolf*, Case No. 18-cv-814-L-BGS, has filed motions to quash, or in the alternative for protective orders, as to Rule 45 subpoenas issued by Respondent Robert Wolf, the Defendant in *Appel v. Wolf*.[1]  Three

---

[1] The motions to quash were filed and briefed in three different districts before being transferred to this district pursuant to Federal Rule of Civil Procedure 45(f).  As each was

motions were filed in the three cases, but cover a total of eight subpoenas that were issued by Wolf to Citibank N.A., BMO Capital Markets Corp., KPMG, LLP, J.P. Morgan Chase N.A., J.P. Morgan Securities, LLC, SunTrust Robinson Humphrey, Inc., SunTrust Bank, and Millennium Health LLC.  (Case No. 21-cv-1466-L-BGS at ECF Nos. 2-3, 5; Case No. 21-cv-1536-L-BGS at ECF 1; Case No. 21-cv-1557-L-BGS at ECF 1.)

Appel argues the discovery sought in the subpoenas is not relevant to a claim or defense, not proportional to the needs of the case, protected by rights of privacy and confidentiality, and that the subpoenas are simply an attempt to harass Appel.  (ECF 3 at 2-14.[2])  Wolf has filed oppositions to each motion.  (Case No. 21-cv-1466-L-BGS at ECF No. 10; Case No. 21-cv-1536-L-BGS at ECF 7, 9; Case No. 21-cv-1557-L-BGS at ECF 5.)  Wolf argues the discovery is relevant to the truth of Wolf's defamatory statement. (*Id.*)  Appel filed reply briefs in two of the cases and the parties filed a joint statement pursuant to then-applicable local requirements in Case No. 21-cv-1557-L-BGS before it was transferred here. (Case No. 21-cv-1466-L-BGS at ECF Nos. 10, 15; Case No. 21-cv-1536-L-BGS at ECF 12; Case No. 21-cv-1557-L-BGS at ECF 8.)

Having considered all the briefing, the Court **GRANTS** the motions for the reasons set forth below, but denies an award of fees to Appel.  (Case No. 21-cv-1466-L-BGS at ECF Nos. 2-3, 5; Case No. 21-cv-1536-L-BGS at ECF 1; Case No. 21-cv-1557-L-BGS at ECF 1.)

///

---

transferred to this district, they were low-numbered to the underlying case in this district, Case No. 18-cv-814-L-BGS.  *See* CivLR 40.1.

[2] The Court references the CM/ECF electronic pagination unless otherwise noted.  Given the briefing on all three motions is very similar, for the sake of efficiency, the Court cites primarily to the parties' briefing in the first case transferred to this District, Case No. 21-cv-1466-L-BGS.  However, the Court has reviewed the briefs in the other cases and fully considered them is issuing this Order.  The Court cites to the briefs in those cases when necessary.

## II.   BACKGROUND

### A.   Claim for Libel Per Se

Appel's Complaint in the underlying action asserts a single claim for libel per se against Wolf for a statement Wolf made about Appel in an email.  (Compl. [ECF 1] ¶¶ 9-13, ¶¶ 14-19 (First Claim for Relief, Libel Per Se[3]).)  The email related to a different case, between Appel and Concierge Auctions, LLC ("Concierge"), a company that auctions high-end luxury real estate.  (Compl. ¶¶ 3-6, 10.)

Appel's Complaint alleges that despite the property owner indicating an intention not to sell a particular property and having refused to sign a purchase agreement with Concierge, Concierge took and refused to return Appel's $285,000 deposit.  (*Id.* ¶ 5.)  A dispute arose between Appel and Concierge regarding the sale.  (*Id.* ¶¶ 5-6.)  It was in the context of that case that Wolf made the allegedly libelous statement about Appel in an email dated November 27, 2017.  (*Id.* ¶¶ 5-6, 9-10.)  Specifically, Wolf stated:

> By the way, I know Howard Appel from when I used to head the litigation side at Gersten Savage, more than 10 years ago.  Howard had legal issues (securities fraud) along with Montrose Capital and Jonathon Winston who were also clients at the time.  Please send him my regards.

(*Id.* ¶10; Decl. of Steven Brower [ECF 4] ("Brower Decl."), Ex. F.)

Wolf has conceded this statement was mistaken and made about a different Howard Appel.  A declaration submitted by Wolf, in support of briefing on a different issue in the 18-cv-814 case, asserts that this description in the email referred to a different Howard Appel.  (Decl. of Robert Wolf [ECF 5-2] ("Wolf Decl.") ¶ 8 in Case No. 18-cv-814 ("[P]laintiff turned out to be a different Howard Appel . . .").)  Wolf also indicates in the current briefing that he was referring to a different Howard Appel.  (ECF 10 at 2

---

[3] The Court cites to the specific paragraph numbers of the Complaint in Case No. 18-cv-814-L-BGS rather than the CM/ECF electronic pagination.  (ECF 1 in Case No. 18-cv-814-L-BGS.)

("The email to Appel's attorneys mistakenly referred to a different Howard Appel than the current Petitioner . . .").

### B.    Subpoenas

As discussed in more detail below, despite arguing the discovery sought in the eight subpoenas is relevant to the truth of Wolf's statement, Wolf's Opposition does not describe what the eight subpoenas he issued actually seek or how the specific requests in those subpoenas relate to the truth of his statement.  (*See* III.C.1.d.)  Wolf vaguely describes the discovery sought only as "[t]his evidence," "evidence at issue," as seeking "this type of evidence," and "discovery evidence" he claims he is entitled to.  (ECF 10 at 3, 14-15.)  What he actually requests under these voluminous subpoenas is never even summarized, let alone detailed for the Court.

Appel's briefing also does not discuss the subpoenas in detail but does summarize them as "requesting communications between Appel and various financial institutions concerning a credit agreement between Millennium Lab Holdings II, LLC/Millennium Laboratories, LLC (a business entity where Appel previously served as president) and several lenders."  (ECF 3 at 5.)  Appel additionally describes one as "over 380 pages long with exhibits, requesting 'Any and all communications' for a period of four years between Appel, his former employer, and various financial institutions and other parties concerning certain credit agreements."  (ECF 3 at 10 (emphasis in original).)

Based on the Court's own review, Appel's summary is generally accurate, although lacking specifics.  Each subpoena, to the eight different entities, does exceed 380 pages with attached exhibits.  Using the 21-cv-1466 case as an example, there are five exhibits attached to each subpoena: Exhibit A – a Credit Agreement dated April 16, 2014 ("the Credit Agreement"); Exhibit B – a Confidential Information Memorandum ("CIM"); Exhibit C – a March 16, 2014 Commitment Letter ("Commitment Letter"); Exhibit D – a November 7, 2017 Bankruptcy Complaint ("Bankruptcy Complaint"); and Exhibit E – a December 9, 2015 Complaint filed in the District of Delaware against

Appel and others ("District Court Complaint").  (ECF 5-1 through 5-6.)

The subpoenas primarily seek "Any and all communications between" Appel and a specific person or the subpoenaed entity regarding either an entire exhibit or a portion of one of these exhibits for a four-year period, January 1, 2012-January 1, 2016.  (ECF 5-1 at 5-9.)  As examples, item No. 14 requests "Any and all communications between YOU and Howard J. Appel regarding the letter dated March 16, 2014, attached hereto as Exhibit C, between January 1, 2012, and January 1, 2016."  (ECF 5-1 at 7.)  Similarly, No. 8 requests "Any and all communications between YOU and Howard J. Appel regarding the statement in Exhibit B attached hereto regarding the "Management Discussion and Analysis" section at pages 88-90, between January 1, 2012, and January 1, 2016." (*Id.*)  There are thirty-six similar requests referencing one of the five exhibits in whole or in part.  (ECF 5-1 at 6-9.)  Despite the lack of explanation from Wolf, the Court generally understands the subpoenas to seek more information about the 2014 Credit Agreement from financial institutions that were involved in it.

The requests in the other seven subpoenas are largely the same.  Given the parties have not even discussed them, the Court will not detail them further here.  The above description is sufficient for purposes of the Court's analysis of all the motions, at least based on the parties' arguments.

### C.    Millennium

Wolf's Opposition details the information he has collected concerning Millennium Laboratories ("Millennium"), a company where Appel was president.  (ECF 10 at 6-13.) Wolf's briefing summarizes allegations against Millennium, including: Millennium's urine testing business (*id.* at 6-7 (citing Aff. of Andrew A. Servais ("Servais Aff."), Ex. 1, U.S. Compl. in Intervention ("Govt. Compl.")).); its changes to its sales strategy, allegedly supervised by Appel, that resulted in illegal kickbacks and false Medicare claims (*id.* at 7-8 (citing Govt. Compl.)); a 2014 restructuring of a credit agreement to allow four shareholders, including Appel, to "cash-out" in April 2014 (*id.* at 9-10); the

Department of Justice's ("DOJ") subpoenaing information from Millennium in 2012, the DOJ's action against Millennium for alleged violations of the False Claims Act based on Medicare claims in 2015, and settlement of that action the same year (*id.* at 8 (citing Govt. Compl.), 11-12 (citing Servais Aff., Exs. 19-20)); and Millennium's bankruptcy and confirmation of its bankruptcy plan despite claims against Millennium executives (*id.* at 12-13 (citing *In re Millennium Lab Holdings II, LLC*, 242 F. Supp. 3d 322, 330 (D Del. 2017) and Servais Aff., Ex. 5)). Although Wolf's Opposition largely does not discuss what he actually requests in the subpoenas, the Court has deduced that the five different documents cited throughout the subpoena requests are documents related to the April 2014 Credit Agreement (the Credit Agreement, CIM, and 2014 Commitment Letter) and litigation that followed (Bankruptcy Complaint and District Court Complaint).

## III.   DISCUSSION

### A.   Legal Standards

The subpoenas at issue were issued under Federal Rule of Civil Procedure 45.  (*See infra* III.A.1.a)  However, as discussed below, a Rule 45 subpoena must comply with the limitations on discovery set out in Federal Rule of Civil Procedure 26, (*see infra* III.A.1.b), including being relevant to a claim, here libel per se (*see infra* III.A.2)), or defense, here Wolf's truth defense (*see infra*  III.A.3)).

#### 1.   Discovery

##### a)   Rule 45

Rule 45 allows a party to subpoena a non-party to produce documents.  Fed. R. Civ. P. 45(a)(1)(C); Fed. R. Civ. P. 34(c) ("As permitted in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection").  Rule 45 also dictates when a court is required to quash a subpoena, may quash a subpoena, and when a court may specify conditions instead of quashing or modifying the subpoena. Fed. R. Civ. P. 45(d)(3)(A) (must quash), 45(d)(3)(B) (may quash), 45(d)(3)(C) (specifying conditions).  Federal Rule of Civil Procedure 45(d)(3) requires a subpoena be

quashed or modified if it "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).  Courts may quash subpoenas that require "disclosing trade secrets or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i).

Under Rule 45(d)(1), an "attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Courts are required to "enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1); *see also Intermarine, LLC v. Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215, 1217 (N.D. Cal. 2015) (citing Fed. R. Civ. P. 45(d)(1))("A party or lawyer responsible for issuing and serving a subpoena therefore must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.")).

Rule 45 Subpoenas must meet the same relevancy requirements applicable to any discovery sought because "[t]he scope of discovery through a subpoena under Rule 45 is the same as the scope of discovery permitted under Rule 26(b)." *Intermarine, LLC*, 123 F. Supp. 3d at 1217; *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 530 (N.D. Cal. 2015) (Relying on Advisory Committee Notes to Rule 45 and finding the "scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."); *see also Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005) (citing Advisory Committee Notes and finding scope of discovery under Rule 45 is the same as Rule 34); *see also Everflow Tech. Corp. v. Millennium Elecs., Inc.*, No. 07-05795 JF (HRL), 2008 WL 4962688 (N.D. Cal. Nov. 19, 2008) ("Subpoenas, like all discovery devices, are also subject to the scope and limits set forth in" Federal Rule of Civil Procedure 26(b)(1)); *see also Rich v. Butowsky*, Case No. 20-mc-80081-DMR, 2020 WL 5910069, at *3 (N.D. Cal. Oct. 6, 2020) ("Motions to quash are limited by the scope of discovery under [Rule] 26" and the relevancy standard under [Rule] 26 also applies to

third-party subpoenas"). Accordingly, the Court's focuses its analysis on whether the subpoenas comply with Rule 26.

### b) Rule 26

Parties cannot obtain discovery through a Rule 45 subpoena that is not within the scope of Rule 26(b)(1) and (2).  Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).[4]  In discussing the 2015 Amendments regarding proportionality, the Advisory Committee reiterated a prior note, that "[t]he objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry."  Adv. Comm. Notes to Rule 26 (2015 Amendments) (quoting Adv. Comm. Notes to 1983 Amendments)).

"District courts have broad discretion in controlling discovery" and "in determining relevancy."  *Laub v. Horbaczewski*, 331 F.R.D. 516, 521 (C.D. Cal. 2019) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) and *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005).  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.

---

[4] Wolf's Opposition in the briefing in Case No. 21-cv-1536-L-BGS misquotes Rule 26(b)(1) as including "reasonably calculated to lead to the discovery of admissible evidence."  (ECF 9 at 12 (quoting Rule 26(b)(1)).)  The phrase "reasonably calculated to lead to the discovery of admissible evidence" was deleted in the 2015 amendments to Rule 26(b)(1) because it had "been used by some, incorrectly, to define the scope of discovery."  Adv. Comm. Notes to Rule 26 (2015 Amendments).

"Information within the scope of discovery need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).

Rule 26(b)(2) requires the court, on motion or on its own, to limit the frequency or extent of discovery otherwise allowed by the rules if it determines that (1) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action;" or (3) "the proposed discovery is outside the scope permitted by Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Appel moves to quash under Rule 45, but in the alternative seeks a protective order under Federal Rule of Civil Procedure 26(c).  Rule 26(c) provides that "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment oppression, or undue burden or expense, including," among other options "forbidding the disclosure or discovery."  Fed. R. Civ. P. 26(c)(1)(A)-(H).  "Because the proper scope of a discovery subpoena is controlled by the discovery rules, a motion to quash or modify a discovery subpoena is similar to a motion for a protective order that discovery not be had under Rule 26(c)."  9 Moore's Fed. Practice § 45.50[3]; *see also Savant Sys., LLC v. Crestron Elecs., Inc.*, Civil Action No. 12-MC-51, 2012 WL 987404, at *3 (E.D. Penn. March 22, 2012) ("Typically analysis of Rule 45([d])(3)(A) motions is similar to analysis of Federal Rule of Civil Procedure 26(c) motions for a protective order.") (citations omitted).  "Rule 37(a)(5) applies to the award of expenses" related to a protective order under Rule 26(c).  Fed. R. Civ. P. 26(c)(3).

## 2.    Defamation

"Defamation . . .  involves the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999).  As noted above, Appel asserts a single claim in his Complaint for libel per se.  (ECF 1 ¶¶ 14-19.)  Unlike libel per quod,

1  "[a] statement is libel per se when it 'is defamatory without the need for explanatory

2  matter such as an inducement innuendo or other extrinsic fact.'"  *Quidel Corp. v. Siemens*

3  *Med. Solutions USA, Inc.*, __ F.Supp.3d __, 2020 WL 1820247, at *4 (S.D. Cal. 2020)

4  (quoting *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 700

5  (2007)); *see also Barnes-Hind, Inc. v. Sup. Crt.*, 181 Cal. App. 3d 354, 382 (1986) ("A

6  libel which is defamatory of the plaintiff without the necessity of explanatory matter,

7  such as inducement, innuendo or other extrinsic fact is said to be a libel on its face."); *see*

8  *also Appel v. Wolf*, Nos. 19-56131 and 19-561184, 839 Fed. Appx. 78, at *80 (9th Cir.

9  Dec. 14 , 2020) ("[D]istrict court correctly held that Appel was reasonably likely to

10 succeed on the merits of claim, given that Wolf's email was *facially defamatory* and not

11 immunized by California's litigation privilege.") (emphasis added).[5]

12     Libel per se is also distinguishable from libel per quod in that a plaintiff is not

13 required to prove special damages, *i.e.* "that he has suffered in respect to his property,

14 business, trade, profession or occupation . . . a result of the alleged libel, and no other" to

---

[5] CACI No. 1704 Defamation per se—Essential Factual Elements (Private Figure—
Matter of Private Concern):
   [Name of plaintiff] claims that [name of defendant] harmed
   [him/her/nonbinary pronoun] by making [one or more of] the following
   statement(s): [list all claimed per se defamatory statement(s)]. To establish
   this claim, [name of plaintiff] must prove all of the following:
   Liability
   1. That [name of defendant] made [one or more of] the statement(s) to [a
   person/persons] other than [name of plaintiff];
   2. That [this person/these people] reasonably understood that the
   statement(s) [was/were] about [name of plaintiff];
   3. [That [this person/these people] reasonably understood the statement(s) to
   mean that [insert ground(s) for defamation per se, e.g., "[name of plaintiff]
   had committed a crime"]];
   4. That [name of defendant] failed to use reasonable care to determine the
   truth or falsity of the statement(s).

obtain an award of damages. *Barnes-Hind, Inc.*, 181 Cal. App. 3d at 381-82 (citations omitted). If a plaintiff "proves a libel per se, it is unnecessary to prove special damages; rather, damage to reputation is presumed." *Quidel Corp.*, __ F.Supp.3d __, 2020 WL 1820247, at *4 (citing *Barnes-Hind*, 181 Cal. App. 3d at 381).

"[A] defamatory meaning must be found, if at all, in reading the publication as a whole . . . [not] snippets taken out of context." *Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1040 (9th Cir. 1998). However, "[b]y the same token, not every word of an allegedly defamatory publication has to be false and defamatory to sustain a libel action." (*Id.* (citing *Masson v. New Yorker Magazine*, 501 U.S. 496, 510 (1999)).

### 3.   Truth Defense

"In all cases of alleged defamation, whether libel or slander, the truth of the offensive statement or communication is a complete defense against civil liability, regardless of bad faith or malicious purpose." *Smith*, 72 Cal. App. 4th at 646 (collecting cases).[6] Because Wolf argues the discovery sought is relevant to the truth or falsity of Wolf's statement, the scope of a truth defense is particularly significant to determining relevancy.

"California law permits the defense of substantial truth and would absolve a defendant even if she cannot justify every word of the alleged defamatory matter; it is sufficient if the substance of the charge be proved true, irrespective of slight inaccuracy in the details." *GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 154 (2013). "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified. Put another way, the statement is not considered false

---

[6] CACI No. 1720 Affirmative Defense—Truth

[Name of defendant] is not responsible for [name of plaintiff]'s harm, if any, if [name of defendant] proves that [his/her/nonbinary pronoun/its] statement(s) about [name of plaintiff] [was/were] true. [Name of defendant] does not have to prove that the statement(s) [was/were] true in every detail, so long as the statement(s) [was/were] substantially true.

11

unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced."  *Masson*, 501 U.S. at 517; *see also Jackson v Mayweather*, 10 Cal. App. 5th 1240, 1262-63 (2017).

To establish a truth defense, a "defendant must prove the truth of all important aspects in the statement.  However, defendant is not required to prove the truth of every word of the statement or to prove its literal truth."  *Gantry Constr. Co. v. Am. Pipe and Const. Co.*, 49 Cal. App. 3d 186, 194 (1975); *see also Smith*, 72 Cal. App. 4th at 646-47 ("[T]he defendant need not justify the literal truth of every word of the allegedly defamatory matter.  It is sufficient if the defendant proves true the substance of the charge, irrespective of slight inaccuracy in the details, 'so long as the imputation is substantially true so as to justify the gist or sting of the remark.") (citations omitted) *Maheu v. Hughes Tool Co.*, 569 F.2d 459, 465-66 (9th Cir. 1977) ("Under California law, [a defendant] need not prove the literal truth of the allegedly defamatory accusation, 'so long as the imputation is substantially true so as to justify the gist or sting of the remark.'") (quoting *Emde v. San Joaquin Cnty. Cent. Labor Council*, 23 Cal. 2d 146, 160 (1943) and *Gantry Constr. Co.*, 49 Cal. App. 3d at 194-95).

## B.    Parties' Arguments

Appel argues that Wolf's subpoenas to eight different companies are a fishing expedition hoping to find anything that might make Wolf's admittedly false statement about Appel inadvertently true while also embarrassing Appel.  (ECF 3 at 5.)  Appel argues the subpoenas seek discovery that is not relevant to any claim or defense, not proportional to the needs of the case, subject to privacy and confidentiality protections, and sought only for purposes of harassment.  (*Id.* at 4-14.)  Appel also argues that Wolf has "fail[ed] to explain the relevancy and probative value of the information subpoenaed from financial institutions which were never accused of participating in Millennium's alleged actions."  (ECF 16 at 3.)  Additionally, Appel argues "Wolf failed to first request the records from Appel before exposing the non-parties to the undue burden of

responding to lengthy subpoenas."  (ECF 3 at 10.)

Wolf argues that the discovery is relevant to the falsity of the defamatory email and his truth defense.  (*Id.* at 2-5, 13-15.)  Although he concedes that his statement about Appel was about a different Howard Appel, Wolf argues he is still entitled to the discovery requested to establish his statement, that Appel had "legal issues (securities fraud)," was substantially true based on Appel's involvement with Millennium and Medicare fraud.  (*Id.* at 2-5, 14-15.)  Wolf argues that Millennium was accused of Medicare fraud and illegal kickbacks when Appel was president and Appel and other co-owners "cashed-out" of the company before that conduct fully came to light.  (*Id.* at 1-2.)  Wolf essentially argues this conduct is sufficiently similar to the "legal issues (securities fraud)" to make Wolf's statement substantially true.

## C.    Analysis

The two primary issues raised by Appel's motions are whether the discovery sought by Wolf is relevant to a claim or defense and proportional to the needs of the case.  As detailed below, the Court finds that Wolf has not established that the discovery sought in the subpoenas is relevant for a number of reasons.  However, even if the Court found it was relevant, the discovery sought is not proportional to the needs of the case under Rule 26(b)(1).  The Court first addresses relevancy and then proportionality.

### 1.    Relevance

Wolf argues the discovery sought is relevant to the truth or falsity of his statement.  The Court first considers Appel's argument that Wolf it not entitled to discovery as to the truth of the statement because Wolf's responses to requests for admissions ("RFAs") admit the statement was not true as to *Plaintiff* Appel.  The Court then considers whether the discovery sought is relevant to the truth of Wolf's statement.  And then finally, the Court considers whether Wolf has established that the information he actually requests in the subpoenas is relevant to the truth of his statement.

///

### a)      Precluded by Wolf's Admissions

Appel argues Wolf is precluded from discovery as to the truth of Wolf's statement because he has admitted the information stated in the defamatory email is not true.  (ECF 3 at 6 (citing Brower Decl., Ex. G ("Wolf's responses to RFAs," 5-8 [ECF 5-12 at 19]).) Appel is essentially arguing that Wolf cannot obtain discovery regarding the truth or falsity of a statement he has already conceded is false in numerous significant respects. (ECF 3 at 5-6.)

Wolf stated:

> By the way, I know Howard Appel from when I used to head the litigation side at Gersten Savage, more than 10 years ago.  Howard had legal issues (securities fraud) along with Montrose Capital and Jonathon Winston who were also clients at the time.  Please send him my regards.

(ECF 5-11, Ex. F to Brower Decl.)

In responses to the RFAs, as to Appel (Plaintiff), Wolf admits that he did not know Appel, Appel had never been his client, Appel was not a client when Wolf was head of litigation at Gersten Savage, and Wolf did not know this Appel had "legal issues" when Wolf was head of litigation at Gersten Savage.  (Wolf's responses to RFAs 5-8 [ECF 5-12 at 19]).)  As Appel explains, and Wolf conceded in his brief, the Plaintiff in this case is not the Howard Appel that Wolf was referring to in the email.  (ECF 3 at 5-6; ECF 10 at 2.)  Appel argues that Wolf is now just trying to find something in the conduct of Appel's former employer, Millennium, that would make Wolf's concededly false statement about Appel inadvertently true after the fact.  (*Id.*)

However, Appel does not cite any authority that would allow the Court to completely preclude Wolf from seeking *discovery* as to the truth of his statement because Wolf has admitted he now knows these portions of the defamatory email were untrue. Practically, Appel is asking the Court to find as a matter of law, based on undisputed evidence (Wolf's admissions), that a truth defense is precluded because Wolf has

14

admitted that the statement was not true.  In the absence of authority from Appel and giving due consideration to the scope of a truth defense, (*see* III.A.3 and III.C.1.c)) the Court is not persuaded it can completely preclude discovery as to the truth or falsity of the statement based on Wolf's responses to the RFAs.

### b)      Whether the Discovery is Relevant to the Truth or Falsity of Wolf's Statement

The Court starts with the premise that the parties are entitled to discovery regarding the truth of Wolf's statement.[7]  Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense");[8] (*see also supra* III.A.3 (truth defense).)  However, this does not allow Wolf to conduct discovery regarding any topic.  The discovery must be relevant to the truth of the statement.

To be relevant, the discovery sought must "tend[] to make a fact of consequence" to the truth or falsity of Wolf's statement "more or less probable."  Fed. R. Evid. 401 (defining relevance).  In determining what would be of consequence to the truth or falsity of Wolf's statement, the Court's analysis must start with the statement at issue and consider whether the discovery requested in the subpoenas is relevant to the truth of Wolf's statement based on the standards summarized above regarding a truth defense. (*See* III.A.3)

///

///

---

[7] The Court is not deciding whether the statement is or is not substantially true based on Wolf's allegations.  However, the Court must look to the scope of a truth defense to determine the scope of permissible discovery for that defense.

[8] For purposes of these motions, there is no significant distinction between Appel proving the statement false or Wolf proving it is true.  However, because Wolf's relevance arguments focus on the standards for a truth defense, the Court's analysis also focuses on these standards to assess the proper scope of discovery regarding the issue.

Wolf stated:

> By the way, I know Howard Appel from when I used to head the litigation side at Gersten Savage, more than 10 years ago.  Howard had legal issues (securities fraud) along with Montrose Capital and Jonathon Winston who were also clients at the time.  Please send him my regards.

(ECF 5-11, Ex. F to Brower Decl.)

As an initial matter, based on the Court's review of the parties' briefing and the subpoenas at issue, it is clear Wolf is seeking discovery regarding something completely different from what he alleged in the statement at issue.  As detailed below, the Millennium allegations in Wolf's briefing regarding false Medicare claims and illegal kickbacks at Millennium under Appel have no connection to Wolf's statement that Appel had "legal issues (securities fraud) along with Montrose Capital and Jonathon Winston." (*Id.*)  Wolf made a specific statement about Appel and none of the discovery sought is of consequence to the truth of that actual statement.  Wolf cannot simply find something completely different, but equally negative about Appel, and seek discovery regarding it.  It must still be of some consequence to the truth of the statement and this discovery is not.  This alone is sufficient reason to find the discovery sought is irrelevant.

However, given a "defendant is not required to prove the truth of every word of the statement or to prove its literal truth" *Gantry Const. Co.*, 49 Cal. App. 3d at 194, and that the Court is considering the scope discovery, the Court considers in more detail whether Wolf has established the relevancy of the subpoena requests.

### c)   Other Grounds for Relevance

### (1)   Substantially Similar

The Millennium conduct alleged in the briefing is certainly different from Wolf's actual statement.  Wolf's briefing and the subpoenas indicate that Wolf is seeking discovery regarding Millennium in 2012-2016.  Relying primarily on allegations in a government complaint against Millennium, Wolf asserts that Millennium, under Appel as

President, engaged in a business model that generated unnecessary urine drug testing, resulting in Millennium's submission of false Medicare claims, and that it engaged in illegal kickbacks. (ECF 10 at 6-8.) As already summarized above, Wolf relies on the following: the DOJ subpoenaed information from Millennium in 2012; in 2014 Millennium restructured a 2012 credit agreement to refinance financial obligations and pay more than a billion in dividends to shareholders, including Appel; the government filed a False Claims Act case against Millennium in 2015 that was settled the same year; and Millennium filed for bankruptcy when it could not satisfy both the settlement and its obligations under the 2014 Credit Agreement. (*Id.* at 9-13.) Although Wolf largely does not explain how the specific requests in the subpoenas are relevant, the Court can deduce Wolf is seeking more information about these allegations.

Wolf argues he is still entitled to this discovery to establish his statement that Appel had "legal issues (securities fraud)," because it was substantially true based on Appel's involvement with Millennium and Medicare fraud. (*Id.* at 2-5, 14-15.) Wolf argues that Millennium was accused of Medicare fraud and illegal kickbacks when Appel was president and Appel and other co-owners "cashed-out" of the company before that conduct fully came to light. (*Id.* at 1-2.) Wolf essentially argues this conduct is sufficiently similar to the "legal issues (securities fraud)" to make Wolf's statement substantially true.

As summarized above, (III.A.3), a defendant can prove truth despite "slight inaccuracy in details" or "minor inaccuracies" so long as the defendant proves "the truth of all important aspects in the statement" such that the "imputation is substantially true so as to justify the gist or sting of the remark" *GetFugu Inc.*, 220 Cal. App. 4th at 154; *Gantry Constr. Co.*, 49 Cal. App. 3d at 194; *Smith*, 72 Cal. App. 4th at 647. Because a truth defense allows for these variations from literal truth, minor or slight inaccuracies in the details if the allegation is still "substantially true," discovery might also encompass something other than exactly what Wolf said. *See Smith*, 72 Cal. App. 4th at 647;

*Masson*, 501 U.S. at 517 ("Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified.").  Because a truth defense can be established with something that differs in these respects from the statement, discovery regarding a truth defense may encompass more than the literal statement.

Wolf argues "Appel *did have* 'legal issues (securities fraud)' based on his conduct as president of Millennium Healthcare which eventually led the DOJ to intervene in multiple whistleblower complaints alleging, among other things, '[s]ince its founding, Millennium has knowingly submitted many millions of dollars' worth of false claims to [Medicare] for urine drug tests that were not reasonable and necessary.'" (ECF 10 at 2-3 (quoting allegations in Govt. Compl.)(emphasis in brief).)  Throughout his Opposition Wolf fails to provide any proffer in support of his assertion that Appel did have "legal issues (securities fraud)."  There are no allegations of securities fraud in Wolf's lengthy summary of allegations regarding Millennium, and Wolf never argues his statement is true because Appel was involved in securities fraud or that the discovery will show Appel committed securities fraud.  Focusing instead on fraud as a common term, Wolf argues Appel did have "legal issues (securities fraud)" because Millennium was accused of "fraudulent Medicare billing."  (*Id.* at 4.)  He claims fraudulent Medicare billing is similar enough to securities fraud that it will prove his assertions that Appel had "legal issues (securities fraud)" substantially true.  (*Id.* at 4-5.)

In Reply, Appel argues that the differences in the Millennium conduct and what Wolf actually stated are not minor or insignificant inaccuracies.  (ECF 16 at 4.)  In essence, Appel contends that the difference between Medicare fraud and securities fraud is not a minor or insignificant inaccuracy.  (*Id.*)[9]

---

[9] Appel also argues that the "gist" of the statement cannot be true because the email regards "a different company, with different personnel, represented by different lawyers, at a different time, [and concerning] a different set of legal problems."  (ECF 3 at 9.)

1    Appel distinguishes the cases Wolf relies on as showing his statement was true.

2    (*Id.* at 4.)  The cases cited by Wolf involved inaccuracies that were insignificant or minor.

3    (*Id.*)  He specifically addresses *Schwartz*, in which the statement that a physician was

4    "being sued for stock fraud" was found substantially true based on the physician "being

5    sued for making deceptive statements related to stock transactions."  (*Id.* (quoting

6    *Schwartz v. Am. Coll. of Emergency Physicians*, 215 F.3d 1140, 1147 (10th Cir. 2000).)

7    Appel similarly distinguishes *Simons v. United Press International*, in which the court

8    found the use of the term rape was not false because it was a common usage term that

9    encompassed second degree sexual assault."  (*Id.* (citing 654 F.2d 478, 481 (7th Cir.

10   1981).)

11   The Court agrees that these cases are distinguishable from the present case in that

12   the facts supporting the truth are just more detailed ways of describing the shorter or

13   more common terminology used in the statement at issue.  Here, Wolf is not just trying to

14   prove the truth of his assertion, Appel had "legal issues (securities fraud)," with details

15   showing he was involved in securities fraud or even that would show he did something

16   that could actually be considered securities fraud.  Rather, he is trying to substitute in an

17   entirely different type of conduct – submission of false Medicare claims – for securities

18   fraud.

19   The Court's own review of cases suggests slight or minor inaccuracies do not

20   encompass a completely different category of activity.  Rather, the type of inaccuracies

---

However, the issue regards whether Wolf's statement that Appel had "legal issues (securities fraud)" is substantially similar to the Millennium fraud such that Wolf can prove truth despite "slight inaccuracy in details" or "minor inaccuracies" so long as the defendant proves "the truth of all important aspects in the statement" such that the "imputation is substantially true so as to justify the gist or sting of the remark" *GetFugu Inc.*, 220 Cal. App. 4th at 154.  The "gist or sting" refers to the "legal issues (securities fraud)," not the email as a whole.  Therefore, Wolf argues he is entitled to the discovery regarding Millennium.

that fall within the scope of a truth defense is much narrower.  Examples of statements that were not entirely true, but were considered true enough for a truth defense include stating someone "work[ed] to exhausting 13 hour days" when the person actually worked 14 hours on one day and 11 on the second; alleging someone had cosmetic surgery to a particular part of their body when they actually had cosmetic surgery to a different part of their body; and stating "our dad's a pimp" when he was not presently, but there was evidence he had been at some point.  *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos.*, 306 F.3d 806, 826 (9th Cir. 2002) (hours worked); *Jackson*, 10 Cal. App. 5th at 1262-63 (Regarding cosmetic surgery, noting it was conceivable the distinction could matter, but lack of evidence in support); *Hughes v. Hughes*, 121 Cal. App. 4th 931, 936-39 (2004).  Some variations in dollar amounts have also been considered minor enough.  *Gantry Constr.*, 49 Cal. App. 3d at 195-96 (collecting cases).  As the court explained, the sting of being accused of being arrested for burglary and stealing *thousands* of dollars' worth of possessions was being arrested for burglary even though the value of the items stolen was only *$500*.  *Id.* at 196 (emphasis added).  Other minor variations that do not preclude a truth defense include four and a half months versus five and a half months and before-and-after photographs taken from different angles.  *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 28-29 (2007) ("A slight discrepancy in time frame does not provide . . . an escape hatch from the truth defense.").  Unlike these cases, the difference between securities fraud and the Medicare fraud is much greater, not a minor variation.  Therefore, the statement regarding securities fraud is not substantially similar to the Millennium fraud.

The same is true if the statement were viewed as accusing Appel of being involved in a crime.  Wolf could not prove the truth of one crime with proof of a different one.  *See* Restatement Second of Torts, § 581A True Statements, Comment f. ("A specific charge of one crime is not justified by proof of the commission of another crime of the same kind.") (collecting cases).  In *Hughes v. Hughes*, the Court of Appeal, relying on the Restatement Second of Torts, explains that "[i]f a defamatory statement is a specific

20

1  allegation of the commission of a particular crime, the statement is true if the plaintiff did

2  commit that crime," giving as an example the charge of being an embezzler being true if

3  a single act of embezzlement were committed.  122 Cal. App. 4th at 937.  Following this

4  logic, Wolf would be entitled to discovery regarding Appel and securities fraud.  But, as

5  noted above, the discovery sought does not concern securities fraud.  Wolf is still trying

6  to obtain discovery regarding one bad course of conduct to justify his accusation of a

7  different bad course of conduct.  Discovery regarding Millennium is not even relevant to

8  Wolf's version of his statement because it concerns entirely different conduct than

9  alleged in the statement.

10       Wolf also suggests that if both types of fraud have a similar negative effect on the

11  reader, then his statement is substantially true.  (ECF 10 at 4.)  However, the Court does

12  not interpret this standard to be quite as unconnected from the actual statement at issue as

13  Wolf.  Rather, the effect on the mind of the reader is a way to evaluate if inaccuracies

14  between a statement and reality are minor enough that the gist, sting, or substance of the

15  statement is still true.  *See Masson*, 501 U.S. at 517 ("*Minor inaccuracies* do not amount

16  to falsity so long as the substance, the gist, the sting, of the libelous charge be justified.

17  *Put another way*, the statement is not considered false unless it would have a different

18  effect on the mind of the reader from that which the pleaded truth would have

19  produced.") (emphasis added); *see also Gilbert*, 147 Cal. App. 4th at 28-29 ("A slight

20  inaccuracy in the details will not prevent a judgment for the defendant, if the inaccuracy

21  does not change the complexion of the affair *so as to* affect the reader . . . differently'")

22  (emphasis added) (citations omitted).  It does not mean that Wolf can seek discovery

23  regarding any conceivable topic because any negative information discovered might have

24  an equally negative effect on a reader as the statement at issue.  Such an approach would

25  result in unlimited discovery regarding every defamation plaintiff and Wolf has cited no

26  authority indicating that discovery should be so broad and untethered from the actual

27  statement at issue.

28

### (2)   Legal Issues (securities fraud)

Wolf's discovery requests also fail because Wolf has not shown how the Millennium conduct is relevant to Appel having "legal issues."  Alleged fraudulent conduct as president of Millennium does not mean that Appel had legal issues regarding such alleged fraudulent conduct.  Legal issues are distinct from factual issues.  Black's Law Dictionary defines legal issue as: "1.  A legal question, usu. at the foundation of a case and requiring a court's decision; question of law (1). — Also termed *issue of law*; *question of law*."  Issue Definition, *Black's Law Dictionary* (11th ed. 2019), *available at* Westlaw.  Black's Law Dictionary defines an issue of fact as "A point supported by one party's evidence and controverted by another's. — *Also termed fact issue; question of fact; factual issue.*"  *Id.*

Wolf's discovery requests involve him seeking to prove that Appel was involved in different fraudulent conduct.  However, the email limits the discovery to legal issues regarding securities fraud.  Legal issues involve questions of the law whereas factual issues involve one party's evidence (facts) controverted by another's evidence.  Hence, discovery about Appel's alleged fraudulent conduct seeks evidence to prove facts that he was so involved.  He does not address how the requested discovery is relevant to legal issues that Appel supposedly had.[10]

In sum, Wolf's exploratory expedition seeking evidence of any kind of fraud is therefore outside the scope of his defense that Appel had legal issues regarding fraud.  Wolf fails to show how his requests for documents seek discovery to prove Appel had legal issues regarding fraudulent conduct.  As such, the Court finds the discovery sought is not relevant for this reason as well.

---

[10]  Appel in his Reply also states that Appel was not named individually as a Defendant in the cases *United States of America, et al. v. Millennium Laboratories, Inc*. and *In re Millennium Lab Holdings II, LLC*. either case.  (ECF 16 at 5.)  All the subpoenaed records concern Millennium, and not Appel individually.  (*Id.*)

#### d) Specific Requests

As explained above, (*see* II.B), Wolf largely does not explain or describe what the eight subpoenas he issued actually seek or how the specific requests in those subpoenas relate to Wolf's statement.  He only references one request from one of the subpoenas in his briefing and simply asserts it is relevant to the gist or sting of his statement.  (ECF 10 at 5.)  As discussed above, each subpoena exceeds 380 pages when the five different exhibits are included.  (*See* II.B.)  Those five exhibits or specific portions of them are referenced in more than 30 specific requests that primarily seek "any and all communications" between Appel and the subpoenaed entity or a specifically named person presumably associated with that entity, although that also is not explained.  (*Id.*)

The Court can generally deduce these requests seek more information about the 2014 Credit Agreement and associated documents, but Wolf does not specify how "any and all" of these communications with every entity and specifically named person are relevant.  Wolf has essentially left it to the Court review and try to glean why hundreds of requests seeking "any and all communications" would be relevant to the truth of his statement.  Even assuming the Court found the general topic of Millennium and the 2014 Credit Agreement relevant to the statement at issue, without Wolf explaining how these requests connect to the statement, the Court would find the eight subpoenas to be overbroad, overburdensome, and irrelevant.  Therefore, the Court finds that Wolf has failed to show how these requests satisfy the relevance requirement.

#### 2.     Proportionality

As detailed above, in addition to being relevant, discovery must be "proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving important issues, and whether the burden of expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Rule 26(b)(2) also requires the court, on motion or on its own, to limit the

frequency or extent of discovery otherwise allowed by the rule if it determines that (1) "the discovery sought it unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action;" or (3) "the proposed discovery is outside the scope permitted by Rule 26(b)(1)."

As discussed above, (*see* III.C.1), the Court finds the discovery is outside the scope permitted by Rule 26(b)(1).  However, even if the Court found Wolf had explained how the specific requests were relevant to the statement at issue and that the general topic of Millennium was relevant to the statement at issue, the Court would still find the discovery is not proportional to the needs of the case and could have been obtained from a less burdensome and less expensive source that Wolf had the opportunity to pursue.

As to proportionality, the Court is persuaded that the discovery sought is not important to resolving important issues in the case and the burden and expense of it outweighs its likely benefit.  Assuming that the specific requests had relevance to the truth of the statement at issue, the discovery is still very tangential.  Wolf would essentially be seeking discovery to conduct a mini-trial regarding all the allegations against Millennium to establish Appel even had legal issues with those matters.  Before Wolf could argue Appel "had legal issues (securities fraud)" based on the Millennium allegations, Wolf would have to establish there was any merit to the *allegations* he has drawn from various complaints and that Appel had anything to do with any of them.  And even then, Wolf would have to translate false Medicare claims and "cashing out" into "legal issues (securities fraud)."

The peripheral nature of these requests also factors into the weighing of the likely benefit as compared to the burden and expense.  The Court will not repeat again, the vast scope of these subpoenas (*see* II.B and III.C.1.d).)  However, the Court notes that the lack of explanation how these many specific requests to eight different companies are relevant

24

(*see* III.C.1.d)) suggests the burden and expense outweighs the likely benefit even if the Court found some relevancy.  It is also indicative that this is a fishing expedition with Wolf attempting to find anything he can after-the-fact to support his statement with little idea what exactly he expects to find in the "any and all communications" that would have to be searched for as to each exhibit or portion of exhibit and then produced by eight different companies.

This is a particularly concerning when, as here, it appears that Wolf never attempted to obtain any of this information from Appel.  (*See* ECF 3 at 10 ("Wolf failed to request records from Appel before exposing the non-parties to the undue burden of responding to lengthy subpoenas.").)  Even assuming this discovery were relevant, Wolf could have sought it from Appel before resorting to expansive subpoenas to eight different non-parties.  At a minimum, Wolf might have sought the discovery from some, rather than every company involved in the 2014 Credit Agreement.  While the non-parties have not raised it, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed . . . if it determines that: (i) the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).  Again, the Court is not finding Wolf has established any of the discovery requests are relevant, but even if they were, they are overly burdensome, and the discovery sought could be obtained in by less expensive and more convenient means.

The Court finds that even if the discovery requests were relevant, they are not proportional to the needs of the case under Rule 26(b)(1) and not permitted under Rule 26(b)(2).  Because the discovery sought in a Rule 45 subpoena must comply with the scope of Rule 26(b), (*see* III.A.1.a)), and the Court may prohibit discovery pursuant to Rule 26(c)(1), III.A.1.b)), the Court **GRANTS** the motions to Quash, or in the alternative for protective orders.

///

### 3.    Other Arguments Raised by Appel

Appel additionally challenges the subpoenas as invading privacy rights and confidentiality protections.  (ECF 3 at 10-12.)  He also argues that the purpose of the subpoenas is to harass Appel.  (*Id.* at 13-14.)  In addition to the relevancy and proportionality issues raised above, Appel points to the attempt to obtain confidential information as indicative that these subpoenas are just an attempt to further smear Appel.  (*Id.* at 13.)  Given the Court has found the discovery sought is not relevant or proportional to the needs of the case under Rule 26(b)(1) and not permitted under Rule 26(b)(2), the Court need not reach these additional arguments.[11]

### 4.    Expenses

Appel seeks reasonable expenses and fees for each of the motions.  He only quotes Rule 45(d)(1) and states the amount of fees he is seeking.  (ECF 3 at 14.)  Appel does not otherwise address the issue.  In his Reply he "reiterates its request for the fees related to this Motion," but again, provides no argument in support.  (ECF 16 at 6.)

Although the Court has found that the discovery is beyond the scope permitted under Rule 26(b)(1) and (2), meaning it is not permissible under Rule 45 (*See* III.A.1.a) (explaining that the scope of discovery under Rule 45 is the same as Rule 26(b)).), the imposition of sanctions is not warranted here.  First, while Appel emphasizes "must" in Rule 45(d)(1) when quoting it, the Rule indicates courts "must . . . impose an *appropriate* sanction."  Fed. R. Civ. P. 45(d)(1).  Second, it is not clear that such a sanction is even

---

[11]  The Court notes that Appel's briefing on this point fails to explain how any of the authorities cited for confidentiality and privacy protections would apply to this discovery. Putting aside the propriety of Appel raising privacy or confidentiality protections beyond himself, Appel simply summarizes standards and then asserts "All the foregoing parties are entitled to privacy and confidentiality protections, and the requested communications are not discoverable." (ECF 3 at 12.)  It is lacking in respects similar to Wolf's briefing on the specific requests in the subpoenas.  Additionally, Appel does not explain why the existing protective order in place would not be sufficient to protect any privacy or confidentiality interests that actually exist.

26

required here given the subpoenas were issued to non-parties, not Appel, and Rule 45(d)(1) imposes sanctions for "imposing an undue burden or expense *on a person subject to the subpoena*." While the Court was not required to address the issue in depth because Appel sought protective orders in the alternative and Wolf is not entitled to irrelevant discovery under Rule 26 or Rule 45, the Court is not inclined to impose sanctions on essentially no substantive briefing. And, to the extent Appel were to attempt to seek sanctions under Rule 37(a)(5) as permitted after imposition of a protective order under Rule 26(c), (*see* III.A.1.b)), the Court is not persuaded that an award is warranted under Rule 37(a)(5)(ii)-(iii). Additionally, Appel only moved for sanctions under Rule 45(d)(1), making an award of sanctions under Rule 37(a)(5) impermissible. Fed. R. Civ. P. 37(a)(5) (requiring "giving an opportunity to be heard" on the imposition of sanctions).

## IV.   CONCLUSION

Appel's motions to quash or in the alternative for protective orders are **GRANTED in part** as set forth above. The Clerk shall file this Order in each of the three cases listed in the caption above.

**IT IS SO ORDERED.**

Dated:  November 9, 2021

Hon. Bernard G. Skomal
United States Magistrate Judge

27